Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner with minor modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 19 November 1998 as:
 STIPULATIONS
1. On the date of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter.
3. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of the parties.
4. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant-employer.
5. On the date of the injury giving rise to this claim, the carrier on the risk for workers compensation purposes was Federated Mutual Insurance Company.
6. Introduced and admitted into evidence in this matter were plaintiffs Exhibit one, a document showing plaintiffs meal and lodging reimbursements; defendants Exhibits one and two, plaintiffs time sheets for 7 August 1997 and 6 August 1997, respectively; and defendants Exhibit three, a letter dated 8 October 1997 from defendant-employer to the North Carolina Industrial Commission. In addition to the deposition transcripts of Drs. Botero and Parsons and the records attached thereto, the parties also stipulated into evidence in this matter thirty-nine pages of medical records.
***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 58 years old and was residing in Eden, North Carolina. Plaintiff finished the ninth grade. Thereafter plaintiff received some formal instruction towards becoming a licensed electrician; however, he was never actually so licensed. Plaintiff was not working in any capacity for any employer as of the date of the hearing before the Deputy Commissioner.
2. Prior to becoming employed by defendant-employer, plaintiff was a superintendent for Super Tough Star Electric, overseeing a crew. Plaintiff worked for this employer for 24 years until he left for stress-related reasons in February 1995. Subsequent to his employment with Super Tough Star Electric, plaintiff worked for several months with Threadway Electric, contracting out for different jobs.
3. Plaintiff was hired by defendant-employer in July 1996. When he first began working for defendant-employer, plaintiff mainly worked in town, but that changed progressively and plaintiff began traveling around North Carolina and South Carolina in the performance of his job for defendant-employer.
4. In August 1997, plaintiff was performing a job at the Eckerds pharmacy in Cameron Village in Raleigh. In order to lay conduit, plaintiff had to cut concrete on the Eckerds floor. Plaintiff used an electric chipping hammer, which is similar to but smaller than a jack hammer, to cut the concrete floor. Plaintiffs daily time sheet from 6 August 1997 indicates, in plaintiffs handwriting, that he used a jack hammer on this date at this jobsite.
5. On 7 August 1997, plaintiffs daily time sheet does not indicate that plaintiff used the jack hammer or a chipping hammer that day. However, plaintiff contends that he did use the chipping hammer on 7 August 1997, and in doing so he had to bend over for several hours while using it. Plaintiff further contends that in the afternoon when he straightened up, he felt pain in his low back that radiated down his right side into his leg. Plaintiff alleges that later that night he told his wife and his brother, who lives beside him and works with plaintiff, that he had hurt himself at work that day. Plaintiff contends that the following day he informed his supervisor and a secretary that he had hurt his back at work. Plaintiffs last day of work for defendant-employer was 7 August 1997. Plaintiffs time sheet from that day does not make any reference to injuring his back while using a chipping hammer or in any other manner.
6. On 18 August 1997, plaintiff first sought medical attention following his alleged injury by accident when he presented at Morehead Memorial Hospital with complaints of low back pain and right leg numbness. Plaintiff attributed the onset of these complaints to his lifting a bucket of water, and the hospital notes indicate that plaintiff gave an occurrence date of 17 August 1997.
7. on 22 August 1997, plaintiff sought treatment by Dr. James Parsons, a general internist, complaining of a long history of back problems but with present severe low back pain that had a gradual onset but increased in intensity over the previous three weeks. Plaintiff did not report a specific precipitating event or injury to Dr. Parsons. Dr. Parsons, who examined plaintiff and reviewed his MRI, referred plaintiff for a neurosurgical consultation.
8. on 27 August 1997, plaintiff was seen by Dr. Ernesto Botero, a neurosurgeon, at which time plaintiff reported a long history of back pain. Plaintiff presented to Dr. Botero on this date specifically complaining of low back pain and associated numbness and weakness of the lower right extremity. Plaintiff was also suffering from a loss of control over his bowels. Plaintiff noted that his present complaints had developed suddenly at work six weeks prior to this evaluation. In his intake form when first presenting with Dr. Botero at Guilford Neurosurgical Associates, plaintiff indicated that the date of injury was 8 July 1997 and that the injury occurred "on the job. Plaintiff did not relate the chipping hammer incident to Dr. Botero.
9. An MRI, taken when plaintiff visited Morehead Memorial Hospital, confirmed that plaintiff had a large herniated disc at L5-S1, and bulging discs at levels L4-5 and L2-3. Dr. Botero, concerned especially with plaintiffs loss of bowel control, recommended immediate surgery. Plaintiff, however, opted to briefly postpone the surgery due to preexisting family plans. Dr. Botero ultimately performed a right L5-S1 diskectomy on 2 September 1997.
10. Immediately following his surgery, plaintiff noted an improvement in his condition. However, by 26 November 1997, plaintiffs pain had returned. An MRI and x-rays taken on 29 November 1997 revealed a recurrent large paracentral disc extrusion at L5-S1 with a probable free fragment. As a result of the recurrent disc extrusion, plaintiff underwent a second surgery on 27 March 1998.
11. Following the second surgery Dr. Botero referred plaintiff to physical therapy. The physical therapy notes received into evidence in this matter indicate that plaintiff gave less than maximum efforts in these treatments and at times refused to perform the exercises altogether as instructed by the therapist.
12. As of the date of the physicians deposition on 4 March 1999 in the matter, plaintiff had last seen Dr. Botero on 5 November 1998. Plaintiff has not been rated with any permanent partial impairment, had not undergone a functional capacity evaluation, and as of 4 March 1999, Dr. Botero had not released plaintiff to return to work.
13. While defendants do not dispute that plaintiff has had significant back problems since August 1997, defendants denied plaintiffs claim pursuant to a Form 61 filed with the Industrial Commission on or about 1 December 1997. Defendants denied the claim in part on the grounds of insufficiency of notice of the accident.
14. Due to the paucity of evidence corroborating plaintiffs allegations relating to the onset and cause of his back and right leg pain, and also in part for the following reasons, the Deputy Commissioner did not accept plaintiffs claim as credible:
a.) Plaintiffs medical notes reveal that plaintiff has a long history of back problems, and plaintiffs diagnostic test results show that he has degenerative disc disease;
b.) Plaintiffs medical notes all list different dates of onset of plaintiffs back pain that is the subject of this claim;
c.) Plaintiff first sought medical treatment almost two weeks after allegedly injuring his back at work on 7 August 1997, and the medical notes from the hospital indicate that plaintiff injured his back on 17 August 1997 while lifting a bucket of water; and
d.) Plaintiffs daily time sheet from 7 August 1997 does not indicate that plaintiff used a jack hammer or a chipping hammer that day, and this time sheet makes no reference to any alleged back injury.
15. Due to plaintiffs lack of credibility, the Deputy Commissioner was unable to find by the greater weight of the evidence that plaintiff sustained an injury by accident or by specific traumatic incident to his back on 7 August 1997. Having reviewed the record, the Full Commission affirms the credibility findings of the Deputy Commissioner.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not meet his burden of proving by the greater weight of the evidence that he sustained a compensable injury by accident or specific traumatic incident arising out of the course of his employment on 7 August 1997. N.C. Gen. Stat. 97-2(6).
2. Therefore, plaintiff is not entitled to benefits under the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2(6).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law plaintiffs claim must be, and the same is HEREBY DENIED.
2. Each side shall bear its own costs of this proceeding.
This the ___ day of July, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER